IN THE SUPREME COURT OF THE STATE OF DELAWARE

IN THE MATTER OF A MEMBER § 
OF THE BAR OF THE SUPREME § 
COURT OF THE STATE OF § No. 564, 2016
DELAWARE: § 
§ 
GERARD F. GRAY. § 

Submitted: December 6, 2016
Decided: December 9, 2016

Before **STRINE**, Chief Justice; **HOLLAND** and **SEITZ**, Justices.

## O R D E R

This 9th day of December 2016, it appears to the Court that:

(1)     This is a lawyer disciplinary proceeding. On November 22, 2016, the Board on Professional Responsibility filed a report with this Court recommending that the respondent, Gerard F. Gray, be publicly reprimanded and placed on a period of probation for two years, with the imposition of specific conditions. A copy of the Board's report is attached to this order. Neither the Office of Disciplinary Counsel nor Gray has filed any objections to the Board's report.

(2)     The Court has considered the matter carefully. We find the Board's recommendation of a public reprimand with a two-year period of probation with conditions to be appropriate. Thus, we accept the Board's findings and recommendation for discipline and incorporate the Board's findings and recommendation by reference.

NOW, THEREFORE, IT IS ORDERED that the Board's November 22, 2016 report is hereby ACCEPTED.  The Office of Disciplinary Counsel shall disseminate this Order in accordance with Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice

EFiled: Nov 22 2016 12:28PM EST
Filing ID 59866735
Case Number 564,2016

BOARD ON PROFESSIONAL RESPONSIBILITY
OF THE SUPREME COURT OF THE STATE OF DELAWARE

In the Matter of a                                )
Member of the Bar of the                  )
Supreme Court of Delaware             )
                                                           )
GERARD F. GRAY,                           )          Board Case No. 112749-B
                                                           )
                          Respondent.       )

### REPORT OF THE BOARD ON PETITION FOR DISCIPLINE

The Petition for Discipline in this matter was filed on June 1, 2016 (the "Petition") by the

Office of Disciplinary Counsel (the "ODC"). The ODC seeks sanctions against Gerard F. Gray

("Gray" or "Respondent") for violation of Rules 1.15(a), 1.15(b), 1.15(d), 5.3, 8.4(c), and 8.4(d)

of the Delaware Lawyers Rules of Professional Conduct ("Rule" or "Rules"). A hearing was

held on September 8, 2016 (the "Hearing").[1] The members of the panel for the Board on

Professional Responsibility were Earle C. Dempsey; Gary F. Traynor, Esquire; and Daniel F.

Wolcott, Jr., Esquire, Chair (the "Panel"). Patricia Bartley Schwartz, Esquire represented the

ODC, and Charles Slanina, Esquire represented the Respondent.

### I.     FACTS[2]

Respondent was admitted to the Bar of the Supreme Court of Delaware in 1989 (A, ¶ 1).

During the relevant time period, Respondent was engaged in the private practice of law in

---

[1]      References to the hearing transcript are cited as "Hearing Tr., p. ___".

[2]      Most of the facts set forth in the Petition are admitted in the Answer to the Petition for
Discipline filed by Respondent. Such facts are cited as "A, ¶ ___" and at times are taken
verbatim from the Petition.

Georgetown, Delaware (A, ¶ 2). Respondent began practice in 1989 with Community Legal Aid in Georgetown, Delaware. After 2 or 3 years, he worked at New Hampshire Legal Assistance in Berlin, New Hampshire (Hearing Tr., p. 5). In 1994 he returned to Delaware and opened his own practice in Georgetown. From 2000 to 2003, he practiced with a statewide firm under the name of Houghton, Holly, and Gray. Thereafter he has been a solo practitioner (Hearing Tr., p. 6).

On December 16, 2015, Master, Sidlow & Associates, P.A., on behalf of the Lawyer Fund for Client Protection, conducted an audit of Respondent's financial records for the 6-month period ending September 30, 2015 (Hearing Tr., p. 9). The audit resulted in an Independent Accountant's Report dated December 6, 2016 (ODC Exhibit 1) (the "Audit Report").

During the entire time that Respondent was a solo practitioner, he was the lawyer in his office in charge of the books and records for his firm (Hearing Tr., p. 6). Prior to the time the audit began, Respondent employed a bookkeeper, but removed her from her duties as bookkeeper because of too many discrepancies (Hearing Tr., p. 8). During that period, Respondent also employed a CPA who continued performing certain accounting functions (Hearing Tr., p. 9).

The Audit Report (ODC Exhibit 1) contained 19 exceptions. Some of the conditions recited in the report existed prior to the period which was audited (Hearing Tr., p. 11).

Respondent admitted to the operative facts as alleged by ODC in Paragraph 4 of his Answer (Hearing Tr., p. 12). Respondent in his Answer set out in full the allegations of ODC and his responses. The full Answer is set out below, which also delineates the status of each deficiency as of June 10, 2016, the date Respondent filed his Answer to the Petition. The Audit

2

Report and Respondent's corresponding Answer to Paragraph 4 of the Petition revealed that

Respondent failed to properly maintain his law practice books and records, as follows:

"4.     The Audit Report revealed Respondent failed to properly maintain his law practice books and records as follows:

    (a)    Respondent's payroll tax returns for 2010, 2011, and 2012 were filed, but the related taxes had not been paid;

    (b)    Respondent's 2011 federal income tax return was filed, but the related taxes had not been paid;

    (c)    Respondent's 2013 federal and state income tax returns had not been filed as of February 28, 2015;

    (d)    Respondent's federal and state payroll taxes for the second and third quarters of 2015 had not been paid;

Non-Fiduciary Account #0600499701

    (e)    The account was incorrectly titled;

    (f)    There were seven overdrafts;

    (g)    The adjusted bank balance on the bank reconciliation did not agree with the general ledger balance in any of the six months;

Non-Fiduciary Account #820341-697-5

    (h)    The account was incorrectly titled;

    (i)    There were two overdrafts;

    (j)    There were no cash receipts journals, cash disbursements journals, or bank reconciliations prepared;

Non-Fiduciary Account #820341-782-3

    (k)    The account was incorrectly titled;

    (l)    There were no cash receipts journals, cash disbursements journals, or bank reconciliations prepared;

Fiduciary Account #0600499704

    (m)    The total for the cash receipts journal did not agree to total deposits on the bank statement for June or July 2015;

3

(n) The reconciled end-of-month cash balance differed by $165 from the total of all client funds held in April, the reconciled end-of-month cash balance differed by $100 in August, and the reconciled end-of-month cash balance differed by $100 in September;

(o) There were negative balances each month:

   (i) eleven in April totaling $9,613.75;
   (ii) ten in May totaling $9,113.75
   (iii) nine in June totaling $8,119.75;
   (iv) nine in July totaling $8,354.75;
   (v) seven in August totaling $7,304.16; and
   (vi) nine in September totaling $8,004.75.

(p) Respondent could not provide signed retainers for four of the five matters selected for testing and could not provide a statement to the client showing the amount attorney had withdrawn in fees and the remaining balance of the unearned retainer;

Fiduciary Account #820341-692-4

(q) There were no cash receipts journals, cash disbursements journals, or bank reconciliations prepared;

(r) Respondent could not provide signed retainer agreements for one of the three matters selected for testing; and


Real Estate Fiduciary Account #820341-781-5

(s) There were no bank reconciliations or client listings prepared.

**ANSWER:   Admitted.  By way of further answer:**

**(a) Respondent is making monthly payments on his payroll tax obligations;**

**(b) Respondent is making monthly payments on his federal income tax arrears;**

**(c) Respondent's 2013 Federal and State income tax returns were filed on or about March 20, 2015;**

**(d) Admitted.**

**Non-Fiduciary Account #0600499701**

**(e) The account is now correctly titled;**

4

(f)     Admitted that there were seven overdrafts;

(g)     The account is now reconciled and closed;

Non-Fiduciary Account #820341-697-5

(h)     The account title was corrected. The account was opened in May 2015.
        There were a total of three (3) transactions prior to September 2015;

(i)     Admitted that there were two overdrafts;

(j)     Respondent now has cash receipts and cash disbursement journals, and
        reconciliations have been prepared;

Non-Fiduciary Account #820341-782-3

(k)     The account was corrected. The account was opened in May 2015. There
        were no transactions in this account prior to September 2015. It is now
        closed;

(l)     Respondent now has cash receipts and disbursement journals, and the
        reconciliations have been prepared;

Fiduciary Account #0600499704

(m)     This account has now been reconciled and the total for the cash receipts
        journal agrees with the total deposits on the bank statements;

(n)     This account has now been reconciled;

(o)     Admitted that there were negative client balances as stated. By way of
        further answer, Respondent used personal funds to correct the negative
        balances. This account is no longer being used;

(p)     Admitted. By way of further answer, Respondent now uses written fee
        agreements in all client matters and provides a statement to each client
        showing the amount withdrawn in fees and the remaining balance of the
        unearned retained;

Fiduciary Account #820341-692-4

(q)     This account is now reconciled and Respondent has a cash receipts and cash
        disbursements journal. The account was opened in July 2015 and there were
        a total of four (4) transactions in this account prior to September 2015. It is
        now closed;

(r)     Admitted. By way of further answer, Respondent uses written fee
        agreements in all client matters and provides a statement to each client

5

> showing the amount withdrawn in fees and the remaining balance of the
> unearned retainer;
>
> **Real Estate Fiduciary Account #820341-781-5**
>
> (s) This account is now reconciled. The account was opened in July 2015. There
> were no transactions in this account prior to September 2015. By way of
> further answer, all dormant accounts will be closed as soon as possible.
> Respondent now employs a Delaware CPA firm to assist him in maintaining
> his books and records in compliance."

(A, ¶ 4) Respondent specifically testified to each of the exceptions in the Audit Report and confirmed that the exceptions were accurate (Hearing Tr., pp. 12-14).

While the Answer indicates that certain changes have now been made so that the accounts comply with Rule 1.5, Respondent confirmed that the Audit Report accurately reflected the status of his books and records as of September 30, 2015, the date of the audit (Hearing Tr., p. 12).

Respondent filed his 2015 Supreme Court Certificate of Compliance on February 28, 2015 (ODC Exhibit 2). Respondent admitted that, with respect to (A) Question 2.6—to which he answered "yes"—should have been answered "no" (Hearing Tr., p. 15); (B) Question 2.7—to which he answered "yes"—should have been answered "no" (Hearing Tr., p. 16); (C) Question 2.8—to which he answered "yes"—should have been answered "no" (Hearing Tr., p. 16); and (D) Question 2.8—to which he answered "yes"—should have been answered "no" (Hearing Tr., p. 17). If Respondent had answered truthfully, he would have revealed that his law office books and records did not comply with Rule 1.15.

In addition, Respondent testified that, by reason of negative balances in his fiduciary account ending in -704, he failed to safeguard client funds, in violation of Rule 1.15(a) (Hearing Tr., p. 17). Respondent admitted that, by reason of the various exceptions noted in the Audit Report and as alleged in Paragraph 4 of the Petition, he maintained his books and records in

6

violation of Rule 1.15(d) (Hearing Tr., p. 17). Respondent also agreed that he violated Rule 5.3 by failing to provide for reasonable safeguards to assure accurate accounting, and by failing to supervise non-lawyer staff (Hearing Tr., p. 18). By filing his 2015 Supreme Court Certificate of Compliance which contained inaccurate statements, Respondent agreed that he misrepresented to the Court the maintenance of his books and records, in violation of Rule 8.4(c) (Hearing Tr., p. 18). Respondent also admitted that the filing of a Certificate of Compliance containing misrepresentations in 2015 was conduct prejudicial to the administration of justice in violation of Rule 8.4(d) (Hearing Tr., pp. 18-19). Respondent testified that at the time he filed his 2015 Supreme Court Certificate of Compliance, he knew the Certificate was not accurate (Hearing Tr., p. 23).

Finally, Respondent did not admit that failing to pay his payroll taxes for 2010, 2011, 2012, and two quarters of 2015 were violations of the requirement in Rule 1.15(b) that a lawyer promptly deliver monies owed to third parties (Hearing Tr., p. 19) ( A, ¶ 9). While Respondent denied that he violated Rule 1.15(b) by failing to pay his firm's payroll taxes in a timely manner, he did admit that by failing to pay the taxes he violated Rule 8.4(c) (Hearing Tr., p. 27).

As noted above, since the audit Respondent has altered his accounting, recordkeeping, and fee agreements so as to comply with Rule 1.15 (A, ¶ 4). In addition, Respondent has entered into payment agreements with the Internal Revenue Service and the State of Delaware (Hearing Tr., p. 20).

7

## II.    STANDARD OF PROOF

Allegations of professional misconduct must be established by the ODC by clear and convincing evidence.[3] Because of Respondent's admissions, that burden is satisfied as to all Counts. In addition, Respondent testified and admitted all of the facts as alleged. The Panel found that ODC proved these facts by clear and convincing evidence.


## III.    FINDINGS

As noted above, the Panel found that the ODC proved the operative facts and the violation of each professional conduct rule cited in Counts I, III, IV, V and VI by clear and convincing evidence. The only remaining question is whether Respondent violated the duty set out in Count II. The Respondent admitted and the ODC proved the operative facts ODC uses to allege a violation of Rule 1.15(b) by not timely paying payroll taxes. Respondent argues that not paying taxes is a violation of Rule 8.4(c) (which he agrees he violated), and not Rule 1.15(b). Respondent argues that in light of the Interpretative Guideline for Rule 8.4, willful failure to pay income taxes is a violation of Rule 8.4, and that failure to file and pay payroll taxes should be deemed a violation of Rule 8.4 and not 1.15(b). The Guideline does not specifically refer to payroll taxes. However, as Respondent notes, at least one case involving a violation of Rule 8.4 included non-payment of payroll taxes as well as income taxes.[4] The ODC argues that payroll taxes are held in trust because they are deducted from an employee's pay and held for payment to the United States Treasury, and thus when not timely paid constitute a violation of Rule

---

[3]    *In Matter of Tos*, 576 A.2d 607 (Del. 1990); Delaware Lawyers' Rule of Disciplinary Procedure 15(c).

[4]    *In re Finestrauss*, 32 A.3d 978 (Del. 2011).

8

1.15(b). The ODC also points out that it has not made an allegation in this case of a violation of Rule 8.4(d) for failure to pay payroll taxes. Because payroll taxes for employees of a law firm are deducted from an employee's pay, and held for and paid to the United States Treasury, the Panel finds that the funds are funds held for others and a necessary part of the operation of a law firm, and if not paid such action constitutes a violation of Rule 1.15(b).

## IV.    SANCTIONS

Lawyers are required each year to file a Certificate of Compliance with the Supreme Court certifying that the books and records of the law firm the lawyer is associated with are in compliance with the Rules relating to books and records, and with respect to the individual lawyer's compliance with tax obligations. The purpose of the Certificate is to assure the public that lawyers are complying with their financial obligations. The Supreme Court relies upon the Certificates in connection with its role supervising attorneys who are members of the Bar. It is incumbent upon reporting lawyers to ensure that Certificates are truthful. If the Court is unable to rely upon the truthfulness of the self-reporting certifications, the confidence of the public in the trustworthiness of lawyers will be less.

### Objectives And Standards For Imposing Sanction

"The objectives of the lawyer disciplinary system are to protect the public, to protect the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct."[5] It is the duty of the Board to recommend a sanction that will

---

[5]     *In re McCann*, 894 A.2d 1987, 1988 (Del. 2005); *In re Fountain*, 878 A.2d 1167, 1173 (Del. 2005) (quoting *In re Bailey*, 821 A.2d at 866); *In re Doughty*, 832 A.2d 724, 735-736 (Del. 2003.

9

promote those objectives, while remembering the Supreme Court's admonishment that sanctions are not to be punitive or penal.[6]

In determining the appropriate sanction for lawyer misconduct, the Delaware Supreme Court follows the ABA Standards:

> The ABA framework consists of four key factors to be considered by the Court: (a) the ethical duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) aggravating and mitigating factors.[7]

## A.    The Ethical Duties Violated

Based on his own admissions and the related findings of the Panel, Respondent has violated four different duties. The findings of the Panel, coupled with Respondent's admissions, are summarized accordingly:

| RULE VIOLATED | Description |
|---|---|
| Rule 1.15(a)—failing to safeguard client funds | Respondent improperly permitted negative balances in a fiduciary account. |
| Rule 1.15(b)—failing to deliver funds to a third party | Respondent failed to pay tax obligations in a timely manner. |
| Rule 1.15(d)—failing properly to maintain books and records | Respondent failed to maintain cash receipt journals, cash disbursement journals, bank reconciliations, client subsidiary ledgers, and correct titling on accounts. |
| Rule 5.3—failing properly to supervise employees with respect to his law practice books and records | Respondent failed to supervise accounting employees to ensure proper maintenance of his law practice's books and records. |
| Rule 8.4(c)—engage in conduct involving a misrepresentation | Respondent filed with the Supreme Court a Certificate of Compliance which misrepresented the state of his law practice books and records. |

---

[6]    *In re Katz*, 981 A.2d 1133, 1149 (Del. 2009); *In re Garrett*, 835 A.2d 514, 515 (Del. 2003).

[7]    *In re Doughty*, 832 A.2d at 736; *In re Goldstein*, 990 A.2d 404, 408 (Del. 2010); *see also In re McCann*, 894 A.2d at 1088; *In re Fountain*, 878 A.2d at 1173; *In re Steiner*, 817 A.2d at 793, 796 (Del. 2003).

10

| RULE VIOLATED | Description |
|---|---|
| Rule 8.4(d)—engaging in conduct prejudicial to the administration of justice | Respondent filed with the Supreme Court a Certificate of Compliance which misrepresented the state of his law practice books and records. |

## B.    The Lawyer's Mental State

The ODC argues, and Respondent agrees, that the appropriate mental state is negligence (Hearing Tr., p. 118). The Panel agrees that the appropriate mental state is negligence.

## C.    Actual Or Potential Injury

There was no testimony that any client was actually harmed by Respondent's activities. However, actual injury is not required. Here there was potential injury to clients or third parties, as the funds may not have been available if circumstances had been different. The Panel finds that, with respect to the filing of the Certificate of Compliance, there was actual injury since the Court believed that Respondent was in compliance when he was not. The violation only came to light because the Lawyer's Fund for Client Protection instituted an audit.

## D.    Presumptive Discipline

The ODC and Respondent agree that the presumptive discipline is a reprimand. The Panel finds that the presumptive discipline is a reprimand. *See* ABA Standards 6.3 and 7.3.

## E.    Aggravating And Mitigating Circumstances

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanctions to impose.[8] "Aggravation or aggravating

---

[8]    *In re Bailey*, 821 A.2d 851 (Del. 2003); *In re Goldstein*, 990 A.2d at 408.

circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed."[9]

The ODC argued that only one aggravating factor applied—that is, Respondent is substantially experienced in the practice of law (Hearing Tr., p. 121). Respondent was admitted in 1989 and for nearly all of the time practicing was responsible for the books and records of the firm with which he was associated. The Panel finds that Respondent has substantial experience in the practice of law.

Mitigating factors "are any considerations or factors that may justify a reduction in the degree of discipline to be imposed."[10] The Panel finds that the mitigating factors are as follows:

1.    absence of prior disciplinary record[11]—This is Respondent's first disciplinary action.

2.    absence of dishonest or selfish motive[12]— It does not appear that Respondent had a dishonest or selfish motive.

3.    personal or emotional problems[13]—Respondent testified that he had over a period of years suffered concussions. These affected his ability to concentrate for sustained periods of time. Respondent did not argue that

---

[9]    ABA Standard 9.21; *In re Steiner*, 817 A.2d 793, 796 (Del. 2003).

[10]    ABA Standard 9.31.

[11]    ABA Standard 9.32(a).

[12]    ABA Standard 9.32(b).

[13]    ABA Standard 9.32(c).

12

the resulting medical condition excused his conduct, but mentioned it just in mitigation.

4.  rectifying the consequences of misconduct[14]—Respondent testified that he has re-named those accounts which were misnamed; adopted accounting procedures to address the various problems; adopted conforming retainer agreements; and is paying his taxes in accordance with agreements with the taxing authorities.

5.  full disclosure or cooperative attitude toward proceedings[15]—By all indications, Respondent provided full disclosure to the ODC and was professional and cooperative throughout these proceedings.

6.  character or reputation[16]—With the consent of the ODC, Respondent submitted a letter from Vivian A. Houghton as to Respondent's character. Ms. Houghton has known Respondent personally and professionally for over 25 years, and indicated he was a person of good character. The Panel finds that Respondent's reputation in the legal profession and community is good.

7.  remorse[17]—Respondent is remorseful about the problems he caused.

---

[14]    ABA Standard 9.32(d).

[15]    ABA Standard 9.32(e).

[16]    ABA Standard 9.32(g).

[17]    ABA Standard 9.32(l).

## V.    PANEL'S RECOMMENDED SANCTION

The Panel's recommendation of an appropriate sanction assists the Court, but it is not binding.[18] The Court "has wide latitude in determining the form of discipline, and [it] will review the recommended sanction to ensure that it is appropriate, fair and consistent with . . . prior disciplinary decisions."[19] Accordingly, the Panel must carefully examine prior disciplinary precedent to the extent possible in recommending sanctions.

The Panel has examined the cases cited by the ODC, all of which included books-and-records violations, as to what the appropriate sanction should be. *In re James J. Woods, Jr.*, 143 A.3d 1223 (Del. 2016) (violation of Rules 7.3, 1.15(d), 8.4(c), and 8.4(d); reinstatement from suspension for previous probation violation—3 years probation). *Finestrauss*, 32 A.3d 978 (Del. 2011) (violation of Rules 1.15(d), 8.4(c), and 8.4(d), including a failure to pay payroll taxes; public reprimand and 18 months probation). *In re Jeffrey K. Martin*, 35 A.3d 419 (Del. 2011) (violation of Rules 7(c), 1.15(b), 1.15(d), 5.3, 8.4(c), and 8.4(d), including a misrepresentation on a Certificate of Compliance; public reprimand and 1 year probation). *In re John M. Stull*, 985 A.2d 391 (Del.2009) (violation of Rules 1.15(d), 8.4(c0, and 8.4(d), including a misrepresentation on a Certificate of Compliance; public reprimand and 2 years probation).

The ODC suggested that the Respondent (a) be publically reprimanded; (b) be placed on two years' probation; (c) for the Certificates of Compliance to be filed in 2017 and 2018, provide a pre-certification from an accountant approved by the Lawyer's Fund for Client Protection; and (d) file the certifications with the Court and the ODC. In addition, the ODC requests that Respondent also be compliant with his tax obligations and payment plan, and advise the ODC

---

18      *In re McCann*, 894 A.2d at 1088; *In re Bailey*, 821 A.2d at 877.

19      *Id.*; *In re Tonwe*, 929 A.2d 774, 777 (Del. 2007); *In re Steiner*, 817 A.2d at 796.)

14

that he is compliant each year. Respondent suggested that a private admonition is sufficient sanction for this case. He notes that the mitigating circumstances far outweigh the aggravating circumstances. He points out that the violations were not shown to be occurring over a long period of time, although they did extend beyond the time of the audit.

## VI. PANEL DECISION

The Panel recommends to the court that Respondent be publically reprimanded; that he be placed on two years' probation; and that for the two years he is on probation he have his books and records pre-certified, and file those certifications with the Court and the ODC. The Panel also recommends that Respondent certify to the ODC every year he is on probation that he is in compliance with his payments agreements with the taxing authorities.

The Panel determined not to recommend a private admonition primarily on the basis that violation includes the failure to file and pay taxes on a timely basis, as well as the books and records violations.

15



DANIEL F. WOLCOTT, JR. (ID No. 284)

_____

EARLE C. DEMPSEY

_____

GARY F. TRAYNOR  (ID No. 2131)

Date:   November 21, 2016

[PAC 1237214 / 800]

DANIEL F. WOLCOTT, JR. (ID No. 284)

EARLE C. DEMPSEY

GARY F. TRAYNOR (ID No. 2131)

Date: _____, 2016

[PAC 1238545 / 800]

DANIEL F. WOLCOTT, JR.  (ID No. 284)

EARLE C. DEMPSEY

GARY F. TRAYNOR  (ID No. 2131)

Date:  _NOVEMBER 19_ , 2016

[PAC 1238545 / 800]